UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARLENE MOCTEZUMA,

     Plaintiff,

v.                                         Case No: 8:17-cv-380-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

Plaintiff, Arlene Moctezuma, seeks judicial review of the denial of her claim for supplemental security income. As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, the decision is reversed in part and remanded for further consideration.

## BACKGROUND

### A. Procedural Background

Plaintiff filed an application for supplemental security income on May 10, 2013. (Tr. 226.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 133, 142.) Plaintiff then requested an administrative hearing. (Tr. 148.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 34–65.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 20–28.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–4.) Plaintiff then timely filed a

Complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1976, claimed disability beginning on January 1, 2010, and later amended her alleged onset date to May 10, 2013. (Tr. 226, 243.) Plaintiff has a limited education, completing school through the fourth grade. (Tr. 249.) Plaintiff's past relevant work experience includes work as an assembly bench worker. (*Id*.) Plaintiff alleged disability due to mental issues, forgetting things, headaches, and right side bone pain. (Tr. 248.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since May 10, 2013, the application date. (Tr. 22.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: epilepsy, osteoarthritis, obesity, and affective mood disorder. (*Id*.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with additional limitations. (Tr. 23.) Specifically, the ALJ found that Plaintiff cannot perform work requiring over-the-shoulder work with her right hand. (*Id*.) The ALJ also limited Plaintiff to performing work involving low stress, no high production demands, and simple, routine, repetitive tasks with simple instructions. (*Id*.) Plaintiff was further restricted from interaction with the general public and only minimal contact with others at the worksite. (*Id*.) Finally, the ALJ found Plaintiff can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and stand, walk, and sit six hours out of an eight-hour workday. (*Id*.)

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 24.) Considering Plaintiff's noted impairments, the ALJ determined that Plaintiff could perform her past relevant work as an assembly bench worker. (Tr. 27.) Accordingly, based on Plaintiff's age, education, work experience, RFC, the ALJ found Plaintiff not disabled. (Tr. 28.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20

C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to weigh the opinions of state agency physicians; and (2) the ALJ failed to properly weigh and consider records from mental health care clinic Gracepoint. For the reasons that follow, Plaintiff's first contention warrants reversal.

**A.      State Agency Physicians**

Plaintiff first contends that the ALJ erred in evaluating the opinion evidence. (Dkt. 20 at 11.) Specifically, Plaintiff argues that the ALJ improperly rejected the opinions of state agency consulting physicians Dr. Pauline Hightower, Dr. Arthur Hamlin, and Dr. Efren Baltazar. (Dkt. 20 at 11–14.)

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015). Importantly, however, while all medical opinions must be considered, including opinions regarding a claimant's RFC, a claimant's RFC is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877–78 (11th Cir. 2013).

Although ALJs "are not bound by any findings made by State agency medical or psychological consultants," the opinions of state agency consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 689 (11th Cir. 2013) ("The ALJ also must consider any findings of a state agency

medical or psychological consultant, who is considered an expert, and must assign weight and give explanations for assigning weight the same way as with any other medical source."). "The opinions of nonexamining, reviewing physicians . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

### 1. Dr. Hightower and Dr. Hamlin

Plaintiff argues that the ALJ erred in failing to discuss the opinions of consulting physicians Dr. Hightower and Dr. Hamlin. (Dkt. 20 at 13.) Plaintiff further argues that ALJ's RFC assessment fails to address the limitations discussed in Dr. Hightower and Dr. Hamlin's opinions. (*Id*.)

In their evaluations, both Dr. Hightower and Dr. Hamlin found Plaintiff moderately limited in her ability to respond appropriately to changes in the work setting. (Tr. 95, 110.) In assessing Plaintiff's mental RFC, Dr. Hightower and Dr. Hamlin also opined that Plaintiff can understand, retain, and carry out simple instructions, perform routine tasks on a sustained basis with normal supervision, and can cooperate with coworkers in completing simple tasks and transactions. (Tr. 96, 110.) Both physicians also concluded that Plaintiff can adjust to modest mental demands of the work place. (*Id*.)

In assessing Plaintiff's RFC, the ALJ did not explicitly refer to Dr. Hightower or Dr. Hamlin. While the ALJ did consider and weigh the state agency medical consultants' opinions regarding Plaintiff's physical RFC, he did not address any of their opinions regarding Plaintiff's mental RFC. (Tr. 26–27.) Plaintiff asserts that the ALJ failed to address Plaintiff's moderately limited ability to respond appropriately to changes in the work setting. (Dkt. 20 at 13.) However, in his RFC determination, the ALJ limited Plaintiff to low stress jobs with no high production

demands, involving only simple, routine, repetitive tasks with simple instructions, no interaction with the general public and only minimal contact with others at the worksite. (Tr. 23.) The ALJ's RFC determination clearly accounts for the restrictions identified in Dr. Hightower and Dr. Hamlin's opinions. This includes a limitation to simple, routine, repetitive tasks to address Plaintiff's limited ability to respond appropriately to changes in the work setting. Thus, "[t]o the extent that the administrative law judge erred by failing to state with particularity the weight assigned to [Dr. Hightower and Dr. Hamlin's] medical opinions, the error is harmless" because it does not "affect the administrative law judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding that the ALJ's decision was supported by substantial evidence and, therefore, the ALJ's failure to explicitly state the weight afforded to treating physicians' testimony was harmless error); *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975–76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

2.     *Dr. Baltazar*

Plaintiff next argues that the ALJ failed to address the opinion of consulting physician Dr. Baltazar. (Dkt. 20 at 14.) Plaintiff fails to address which portion of Dr. Baltazar's opinion would have affected the outcome of the ALJ's decision.

Dr. Baltazar evaluated Plaintiff's physical RFC and opined that Plaintiff can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and can stand, walk, and sit for six hours in an eight-hour workday. (Tr. 106–07.) Dr. Baltazar further opined that Plaintiff can frequently balance, stoop, and crouch and occasionally climb ramps, stairs, ladders, ropes, and scaffolds, as well as occasionally kneel and crawl. (Tr. 107.) Dr. Baltazar also concluded that Plaintiff must avoid concentrated exposure to noise and vibration. (Tr. 108.)

The ALJ failed to consider Dr. Baltazar's opinion in his decision. In his RFC determination, the ALJ included many of Dr. Baltazar's suggested restrictions, including Plaintiff's ability to occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and stand, walk, and sit for six hours out of an eight-hour workday. (Tr. 23.) However, the ALJ did not include any postural or environmental restrictions.

The Commissioner argues that the ALJ's failure to consider and weigh Dr. Baltazar's opinion is harmless because Plaintiff's ability to perform her past relevant work is not affected by the postural or environmental restrictions identified by Dr. Baltazar. (Dkt. 21 at 15.) During the hearing, the VE testified that Plaintiff's past relevant work included the job of a bench assembler and that Plaintiff is able to perform this work with her RFC. (Tr. 54–55.) In his decision, the ALJ concluded that Plaintiff is able to perform her past relevant work as a bench assembler. (Tr. 27.) According to the Dictionary of Occupational Titles ("DOT"), work as a bench assembler does not require balancing, stooping, crouching, climbing, kneeling, or crawling and "vibration" is noted as "not present." DICOT § 706.684-022, 1991 WL 679050. However, the noise level is indicated as "loud." *Id.* Neither Plaintiff nor the Commissioner address whether the ALJ's failure to include a restriction limiting Plaintiff's exposure to noise affects her ability to perform work as a bench assembler.

Consultative examiners' opinions are not entitled to the deference normally given treating sources because they are not treating physicians. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not treating physicians"); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160-61 (11th Cir. 2004) ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."); 20 C.F.R. § 404.1527(c)(2) (explaining that treating sources are given greater weight because their opinions "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Dr. Baltazar was not a treating physician, but instead examined Plaintiff's medical records to provide opinions as to Plaintiff's disability. Thus, Dr. Baltazar's opinions were not entitled to deference by the ALJ.

However, when assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179. Although an ALJ is not required to discuss every piece of record evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam), an ALJ cannot pick and choose which evidence supports his or her decision while disregarding evidence to the contrary. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (concluding that the ALJ's decision was not supported by substantial evidence when the ALJ focused on one aspect of the evidence while disregarding contrary evidence); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985) (providing that the ALJ's failure to mention or consider contrary medical records, let alone articulate reasons for disregarding them, is reversible error). Further, the ALJ must "state with at least some measure of clarity the grounds for his decision" so that the Court can determine whether the ALJ had

substantial justification for his finding. *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). Without an explanation of the weight accorded to each item of evidence and an explanation of the reason for the ALJ's decision, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. *Gaskin v. Comm'r of Soc. Sec.*, 533 F. App'x 929, 931 (11th Cir. 2013); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Here, the ALJ did not specifically address Dr. Baltazar's opinions. The ALJ did state that he considered opinion evidence in accordance with the requirements of Section 404.1527, Title 20, Code of Federal Regulations and Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-3p. (Tr. 587.) While it is possible to infer that the ALJ rejected Dr. Baltazar's opinions, the ALJ did not express such a conclusion. Conversely, it is also plausible that the additional opinion of Dr. Baltazar, if properly considered, may have demonstrated that Plaintiff is not able to perform her past relevant work as a bench assembler. *See Baez v. Comm'r of Soc. Sec.*, 657 F. App'x 864, 870 (11th Cir. 2016).

However, it is not within the province of the Court to make such a determination when the ALJ did not proffer an explanation for his decision. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 732-33 (11th Cir. 2011) (finding that "[w]ithout a clear explanation of the ALJ's treatment of [the doctor's] opinion, [the court] cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence" and "when the ALJ fails to state with sufficient clarity the grounds for his evidentiary decisions, [the court] will not affirm simply because some rationale might have supported the ALJ's conclusion, and instead remand for further findings at the administrative hearing level.") (internal quotations and citations omitted).

In light of this, the Court is unable to determine whether the ALJ's decision concerning Dr. Baltazar's opinion is supported by substantial evidence or determine how the decision was made, as the ALJ supplied no explanation for the Court to consider. *See Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 766 (11th Cir. 2014) (finding that because of an ALJ's failure to state with particularity the weight he gave two examining physicians and a reviewing physicians, the court is "unable to determine whether the ALJ's conclusions about the medical opinions are supported by substantial evidence. The ALJ's statement that he carefully considered the entire record is not sufficient."); *Owens*, 748 F.2d at 1514–15 (stating that a "clear articulation of both fact and law is essential to [the court's] ability to conduct a review that is both limited and meaningful"). Doing so would be akin to the Court injecting its own assumptions for the ALJ's conclusion when the decision itself is silent as to the ALJ's reasoning for a particular finding. *See Owens*, 748 F.2d at 1515 (declining to affirm "simply because some rationale might have supported the ALJ's conclusion").

In short, although the ALJ included in Plaintiff's RFC many of the limitations identified in Dr. Baltazar's opinion, the ALJ did not include or address a limitation to noise exposure. This error could have altered Plaintiff's RFC. Moreover, even if the Court were to assume the ALJ considered Dr. Baltazar's opinion, the ALJ did not assign Dr. Baltazar's opinion a particular weight. Based on this, the Court is unable to determine whether the ALJ's conclusions were rational and supported by substantial evidence. The Court therefore reverses under sentence four of 42 U.S.C. § 405(g) and remands so that the ALJ can explicitly consider and explain the weight accorded to Dr. Baltazar's opinion.

## B.      Records from Gracepoint

Plaintiff also contends that the ALJ failed to properly consider and weigh records from her treating mental health care clinic Gracepoint. (Dkt. 20 at 14.) Specifically, Plaintiff argues that the ALJ failed to provide sufficient reasoning for assigning certain records from Gracepoint little or no weight and erred by mischaracterizing or failing to consider other Gracepoint records. (Dkt. 20 at 14–20.)

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015). The ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

On March 5, 2013, Plaintiff was treated by mental health counselor Vonda Roath at Gracepoint. (Tr. 365–68.) As noted by the ALJ, Plaintiff reported feeling overwhelmed, having mood swings, financial issues, and difficulty sleeping. (Tr. 25, 365.) Plaintiff reported that she "worked sporadically." (*Id.*) Ms. Roath diagnosed Plaintiff with psychotic disorder, arthritis, seizures, and migraine headaches. (Tr. 368.) On April 11, 2013, Plaintiff was treated by Dr. Andres Martin at Gracepoint for a psychiatric evaluation. (Tr. 364.) Plaintiff exhibited symptoms of depression, anxiety, and post-traumatic stress disorder and demonstrated diminished interest in activities, insomnia, fatigue, feelings of worthlessness and guilt, lack of concentration, irritability, and fear of dying. (*Id.*) Her attitude and behavior were withdrawn and her mood was anxious, depressed and irritable. (*Id.*) Plaintiff's insight and judgment were fair. (*Id.*) Dr. Martin

diagnosed Plaintiff with psychotic disorder, post-traumatic stress disorder, bipolar disorder, arthritis, seizures, and migraine headaches. (*Id*.)

In his decision, the ALJ afforded the March and April 2013 records from Gracepoint little weight. (Tr. 25.) The ALJ reasoned that Plaintiff's alleged symptoms were not supported by the majority of the medical record and that Plaintiff testified that she had not experienced a seizure in twenty-two years. (*Id*.) The ALJ further reasoned that Plaintiff did not require any recent hospitalization or emergency-room treatment for headaches or mental impairments. (*Id*.) Plaintiff argues that the ALJ's reasoning is flawed because the record supports Plaintiff's symptoms and her seizures are unrelated to her mental impairments. (Dkt. 20 at 15–17.) Additionally, Plaintiff speculates that the ALJ's reasoning is based on the evaluation of Dr. Peter Bursten and argues that this is error as Dr. Bursten's evaluation was dated more than one year prior to Plaintiff's application date and, therefore, did not relate to the applicable period. (Dkt. 20 at 15.)

Plaintiff further argues that "a lack of hospitalization does not mean the reported signs and symptoms were not present to the degree alleged." (Dkt. 20 at 17.) Plaintiff argues that the ALJ failed to consider Plaintiff's hospitalization for depression and suicidal ideation on September 4, 2014. (Dkt. 20 at 19.) However, the ALJ explicitly addressed this record, noting that Plaintiff reported chest pain, shortness of breath, headaches, and leg pain. (Tr. 26, 560.) Plaintiff's laboratory tests results were normal. (Tr. 561.) She was diagnosed with anxiety, depression, suicidal ideation, and hypertension and advised to continue with her medications. (*Id*.)

Plaintiff also contends that the ALJ erred in his assessment of a June 26, 2013, record from Gracepoint. (Dkt. 20 at 18.) Plaintiff presented to Dr. Martin with similar symptoms as those in April 2013. (Tr. 429.) Dr. Martin again diagnosed Plaintiff with psychotic disorder, post-traumatic stress disorder, bipolar disorder, arthritis, seizures, and migraine headaches. (*Id*.) The

ALJ afforded the opinion no weight because Plaintiff "was not limited with regard to her ability to function from a mental standpoint" and did not require hospitalization for a mental impairment. (Tr. 26.) Plaintiff argues that the ALJ's rationale is conclusory, substituting his judgment for that of a medical expert. (Dkt. 20 at 18–19.)

Contrary to Plaintiff's arguments, the ALJ made the appropriate considerations in evaluating the opinions of Dr. Martin and Ms. Roath and articulated good cause to afford their opinions less than substantial weight. Specifically, the ALJ found that the evidence did not bolster their opinions and, instead, supported a contrary finding. *See Winschel*, 631 F.3d at 1179. A review of the evidence cited by the ALJ demonstrates that his decision to afford their opinions little weight is supported by substantial evidence. Specifically, Dr. Mangesh Patel treated Plaintiff in October 2012, May and November 2013, and March 2014. (Tr. 417, 422, 434, 448–49.) Dr. Patel concluded in his psychiatric evaluations that Plaintiff was fully oriented with normal psychomotor activity and demonstrated normal mood and affect, speech, thought form and content, concentration, and intact memory, judgment and insight. (*Id.*) Further, as noted by the ALJ, Plaintiff testified during the hearing that she had not had a seizure in twenty-two years. (Tr. 46.) Additionally, in his June 26, 2013, treatment record, Dr. Martin noted that Plaintiff's attitude and behavior showed signs of being normal and her speech, thought content, and psycho-motor skills were normal. (Tr. 429.) Dr. Martin further noted that Plaintiff had good eye contact, insight, and judgment. (*Id.*)

Plaintiff also takes issue with the ALJ's evaluation of Plaintiff's November 17, 2014, treatment with Gracepoint. (Dkt. 20 at 19.) On November 17, 2014, Plaintiff sought treatment from Dr. Nicole Riddle for a sprained left arm. (Tr. 563.) Plaintiff reported chronic shoulder pain and migraine headaches. (*Id.*) Plaintiff exhibited signs of depression, anxiety, and post-traumatic

stress disorder. (*Id*.) Her attitude and behavior were reported as "normal," although her mood was anxious, depressed and irritable. Dr. Riddle diagnosed Plaintiff with bipolar disorder, post-traumatic stress disorder, anxiety disorder, arthritis, high blood pressure, and seizures. (*Id*.) The ALJ discussed Dr. Riddle's findings and afforded them significant weight "as the claimant appeared to be normal." (Tr. 26.) The ALJ reasoned that the record does not reveal that Plaintiff was significantly limited with regard to her ability to function. (*Id*.)

Plaintiff contends that the ALJ's reasoning that Plaintiff was not significantly limited with regard to her ability to function is inconsistent with the ALJ's finding that Plaintiff has a severe mental impairment. (Dkt. 20 at 20.) Plaintiff further argues that the ALJ mischaracterized the evidence as a "normal examination" because Plaintiff was exhibiting signs of depression and anxiety. (Dkt. 20 at 19.) However, Dr. Riddell reported that Plaintiff's affect and thought content were appropriate and her attitude, behavior, speech, and psycho-motor skills were normal. (Tr. 563.) Further, Plaintiff had good eye contact, insight, and judgment. (*Id*.) Thus, overall, and as noted by the ALJ, Plaintiff did not appear to be significantly limited. (Tr. 26.)

Plaintiff further asserts that the ALJ erred in failing to address Plaintiff's five other treatment records from Gracepoint with Dr. Martin, Dr. Riddell, and nurse practitioner Rebecca Dunn dated from September 2013 through April 2015. (Dkt. 20 at 20.) However, nurse practitioners are not acceptable medical sources. 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1). As such, their opinions are not considered "medical opinions" and cannot establish the existence of an impairment, although their opinions may be used to show the severity of an impairment and how it affects a claimant's ability to work. *Himes*, 585 F. App'x at 762 (citing *Crawford*, 363 F.3d at 1160). Notably, because nurse practitioners are not acceptable medical sources, their opinions are not entitled to substantial weight. *Id*. Further, there is no requirement

that the ALJ specifically refer to every piece of evidence from Plaintiff's medical records in his decision. *Dyer*, 395 F.3d at 1211. Rather, the district court must review the ALJ's decision and determine whether the ALJ considered the plaintiff's medical condition as a whole and also determine whether the ALJ's conclusion, as a whole, was supported by substantial evidence in the record. *Id.* (quoting *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995)). Substantial evidence is something "more than a mere scintilla, but less than a preponderance." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Here, as addressed above, the ALJ's conclusion is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ failed to mention and weigh Plaintiff's global assessment of functioning ("GAF") scores. (Dkt. 20 at 20.) Plaintiff argues that this error is not harmless because the VE testified that an individual with Plaintiff's RFC and GAF scores would be relegated to a sheltered work environment. (*Id.*) Plaintiff's argument misstates the VE's testimony. During the hearing, the VE testified that that an individual with GAF scores consistently less than fifteen would need a sheltered workshop environment for further evaluation of their ability to get to work and interact with others. (Tr. 63–64.) Plaintiff's GAF scores ranged from thirty-nine to sixty. (Tr. 364, 429, 491–93, 506, 563, 566, 568.) Further, the Commissioner has declined to endorse the GAF scale for use in disability programs. Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01; *see Luterman*, 518 F. App'x. at 690. Additionally, although the ALJ did not address each GAF score separately, he did address medical records from Dr. Martin and Dr. Riddell wherein Plaintiff was assigned a GAF score of 39 and 51, respectively. (Tr. 25–26, 364, 563.) Consequently, Plaintiff's argument regarding her GAF scores does not warrant reversal. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 527 (11th. Cir. 2015) (finding failure to specifically weigh GAF scores was "at most"

harmless error where the record reflected that the ALJ considered the evidence relevant to the claimant's mental impairments and his decision was supported by substantial evidence).

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **REVERSED** in part and the case is **REMANDED** under sentence four of 42 U.S.C. 405(g) for further proceedings consistent with this Order.

2. The Clerk of Court is directed to enter judgment consistent with this Order.

**DONE** and **ORDERED** in Tampa, Florida, on February 27, 2018.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record